**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAURICE STOKES** | **:** | **CIVIL ACTION** |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 13-7093** |
| | **:** | |
| **MIKE WENEROWICZ,** *et al.*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**Goldberg, J.**                                                               **July 31, 2017**

**<u>MEMORANDUM</u>**

Maurice Stokes, a Pennsylvania state inmate, initiated this civil rights action pursuant to section 1983, alleging that his Eighth Amendment rights were violated while incarcerated at the State Correctional Institution at Graterford. Stokes contends that prison officials were aware that a fence surrounding the exercise yard was broken but did not restrict inmates from accessing the fence or search for missing pieces of the fence. Stokes alleges that, as a result of Defendants' failures, another inmate was able to stab him with a piece of the broken fence on July 14, 2012. Stokes alleges that the assault was motivated by a $50,000.00 reward offered by Stokes' co-defendant and that the reward was well-publicized to guards and inmates.

Following the attack, Stokes alleges that he was confined to the psychiatric unit for five days based on inaccurate reports that he had threatened to commit suicide. Stokes alleges that his confinement in the psychiatric unit was meant to punish, harass, and intimidate him.

The initial pro se Amended Complaint was filed against former Superintendent Michael Wenerowicz, former Unit Manager Andretta Golden and four John Does. A counseled Second

Amended Complaint added the Pennsylvania Department of Corrections ("DOC") and the State

Correctional Institution at Graterford ("SCI-Graterford") as defendants. Defendants filed a

motion to dismiss, which I granted on July 30, 2015.[1] Stokes then filed a Third Amended

Complaint which contains two claims brought under the Eighth Amendment.

Presently before me is the motion for summary judgment filed by Defendant Wenerowicz

and Golden. As Stokes has not properly exhausted his administrative remedies, Defendants'

motion will be granted.

## I.     UNDISPUTED FACTS

On July 21, 2012, Stokes filed a grievance (No. 421213) concerning the incident that

occurred on July 14, 2012 and his subsequent confinement in the psychiatric unit. On July 24,

2012, the Facility Grievance Coordinator denied the grievance. (See Defs.' Mot., Wenerowicz

Dep., Ex. 23.)[2]

Stokes filed a second grievance (No. 421327) on July 21, 2012 regarding his interactions

with medical staff following the incident on July 14, 2012. The grievance was subsequently

denied. (See id. at Ex. 24.)

On July 21, 2012, Stokes filed a third grievance (No. 422148) stating that he had been

"set up" by correctional officers on July 14, 2012 and that he should never have been taken to the

---

[1] All claims against the DOC and SCI-Graterford were dismissed with prejudice.

[2] To each of the factual statements contained in Defendants' statement of undisputed facts that
pertain to the relevant grievances, Stokes responded "Denied as stated. Mr. Stokes' grievances
are documents that speak for themselves. Plaintiff denies any characterization that is inconsistent
therewith." (Pl.'s Resp. to Defs.' Statement of Undisputed Facts ¶¶ 74-76.) Based on my review,
there is nothing inconsistent between the grievances and Defendants' characterization thereof.
Stokes' response is insufficient to create a genuine issue of material fact. See Boykins v. Lucent
Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) ("mere denials are insufficient to raise
genuine issues of material fact"). As Stokes has offered no contradictory evidence, I accept as
true Defendants' statements regarding the grievances Stokes filed.

psychiatric unit. The grievance was denied as unfounded and frivolous. Stokes appealed and the Facility Manager upheld the initial denial. (See id. at Ex. 28.)

On July 30, 2012, Stokes filed a forth grievance (No. 422183) stating that he was unsatisfied by the Security Office's response to his request for an investigation into the July 14, 2012 incident and that he continued to fear for his safety. The Facility Grievance Coordinator denied the grievance. Stokes appealed the decision and the Facility Manager upheld the denial. (See id. at Ex. 27.)

On August 3, 2012, Stokes filed a fifth grievance (No. 423396) stating that he feared further harm and believed that the investigation to date had been inadequate. The Facility Grievance Coordinator denied the grievance because the issue was previously presented in grievance No. 422183. Stokes appealed the decision. The Facility Manager upheld the initial denial, agreeing that the allegations were addressed in grievance No. 422183 and stating that if Stokes was "not satisfied with the response, [he] should have submitted an appeal, not another grievance." (See id. at Ex. 26.)

On August 4, 2012, Stokes filed a sixth grievance (No. 423402) indicating there was a risk that he would be retaliated against for complaining about the incident on July 14, 2012. The Facility Grievance Coordinator rejected the grievance stating that the issue had been reviewed in a prior grievance. Stokes appealed the initial decision. The Facility Manager rejected the appeal agreeing that the allegations were previously addressed in grievance No. 422183 and stated that if Stokes was "not satisfied with the response, [he] should have submitted an appeal, not another grievance." (See id. at Ex. 25.)

Stokes did not pursue a second-level appeal of any of the six grievances to the Secretary's Office of Inmate Grievance and Appeals. (Defs.' Statement of Undisputed Facts ¶ 76; Defs.' Mot., Stokes Dep. 84:10-12.)

## I. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the

4

non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## II. DISCUSSION

Defendants argue that they are entitled to judgment because Stokes did not properly exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").

Failure to exhaust administrative remedies is an affirmative defense and the defendant bears the burden of pleading and proof. Jones v. Bock, 548 U.S. 199, 216 (2007). "[E]xhaustion is a question of law to be determined by a judge." Small v. Camden Cty., 728 F.3d 265, 269 (3d Cir. 2013)

Under the PLRA, a prisoner must exhaust all administrative remedies prior to filing suit in federal court. 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As such, "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." Small, 728 F.3d at 270 (quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010)).

A prisoner must properly exhaust administrative remedies or risk procedural default. Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004). In order to properly exhaust administrative

remedies, a prisoner must follow the administrative review process as defined by the prison grievance policy. Id. at 231.

The relevant inmate grievance process at SCI-Graterford is defined by DOC Policy DC-ADM 804. (See Defs.' Mot., Ex. F, DC-ADM 804.) The policy outlines a three-tier grievance procedure: (1) an inmate must submit a grievance to the Facility Grievance Coordinator for initial review within fifteen days of the event upon which the claim is based; (2) the inmate may appeal to the Facility Manager within fifteen days from the date of the initial review response/rejection; and (3) within fifteen days of receipt of the decision from the appeal of the Facility Manager, the inmate may seek a final appeal to the Secretary's Office of Inmate Grievances and Appeals. (Id. at 1-1, 1-2, 2-1, 2-4, 2-6.)

As noted above, it is undisputed that Stokes filed six grievances related to the incident in question, (Nos. 421213, 421327, 422148, 422183, 423396 and 423402). He filed a first-level appeal with the Facility Manager from the denial of four out of six grievances (Nos. 422148, 422183, 423396 and 423402) but failed to file a second-level appeal of any of the grievances to the Secretary's Office of Inmate Grievances and Appeals. Stokes' failure to appeal any of the grievances to the Secretary's Office of Inmate Grievances and Appeals means that he failed to comply with the DOC's procedural rules governing inmate grievances. See Defs.' Mot., Ex. DC-ADM 804; see, e.g., Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) (district court properly held that plaintiff failed to exhaust available administrative remedies when he made "no showing that he had taken the second and third steps, which required that he appeal the decision reached by the prison officials in the first step"); Frierson v. St. Francis Med. Ctr., 525 F. Appx. 87, 91 (3d Cir. 2013) ("the record shows that Frierson did not file any appeal of the outcome of any of these initial grievances, as required by the grievance procedure. Thus, we conclude that the

District Court properly granted [defendants'] motion for summary judgment because Frierson failed to properly exhaust his administrative remedies"); Naranjo v. Brooks, 2009 WL 792335, at *4 (E.D. Pa. Mar. 25, 2009) ("Plaintiff never attempted to follow up with prison officials or appeal his grievance, and this failure is fatal to his argument that he exhausted his administrative remedies"); Rodriguez v. Smith, 2006 WL 680965, at *10 (E.D. Pa. Mar. 16, 2006) ("Given that Plaintiff filed no appeal, let alone a timely one, he cannot be in substantial compliance with the PLRA"). As the undisputed evidence demonstrates that Stokes failed to exhaust available administrative remedies, summary judgment must be granted in Defendants favor.

Stokes offers several reasons why his failure to exhaust should be excused. None are availing. He first claims he was unaware of his ability to appeal the denial of a grievance. However, Stokes' claim of ignorance is contradicted by the fact that he did appeal four of the grievances related to this incident to the Facility Manager and submitted an appeal of a denied grievance to the Secretary's Office of Inmate Grievances and Appeals in 2010. See Def.'s Mot., Wenerowicz Dep., Exs. 23-29; Small v. Camden Cty., 728 F.3d 265, 272 (3d Cir. 2013) ("Although Small continues to contend he did not receive a handbook until 2007, and therefore was unaware until then of the grievance procedures, we cannot help but observe that, among other things, he properly filed his first grievance form, fully compliant with those procedures, on August 30, 2004. . . . In sum, the record is clear that Small knew of, and was able to access, [the prison's] grievance procedures"). Regardless, "ignorance or confusion regarding the Pennsylvania DOC policies does not excuse failing to adhere to these requirements." Tirado v. Dep't of Corr., 2014 WL 5860598, at *4 (W.D. Pa. Nov. 12, 2014) (citing Davis v. Warman, 49 F. Appx. 365, 368 (3d Cir. 2003)); see also Miller v. Schuylkill Cty. Prison, 2007 WL 3342766,

at *1 (M.D. Pa. Nov. 9, 2007) ("an inmate's subjective lack of awareness regarding administrative remedies will not excuse compliance").

Next, Stokes argues that he was unable to appeal because the window for appealing had closed by the time he received a response from prison officials. (See Defs.' Mot., Stokes Dep. 90:13-17 ("And it took them months before they finally got it to me. And I think I was time barred from appealing them because I think he took a couple months over the time he was suppose to send it back so I couldn't appeal it."))[3] Even if Defendants failed to provide responses within the time-frames set by DOC Policy DC-ADM 804, Stokes' assertion that that window for appeal closed prior to a response from Defendants is incorrect. DOC Policy DC-ADM 804 makes clear that the time for filing an appeal does not begin to run until a decision is made. See Jones v. Coleman, 535 F. Appx. 90, 92 (3d Cir. 2013) ("Jones argues that [defendants'] failure to respond to his timely filed grievance appeal within the time-frame prescribed by DC–ADM 804 rendered the administrative remedies unavailable to him under PLRA. Jones' argument is unavailing. Even accepting as true that [the prison official] was untimely in responding to Jones' grievance, his action did not preclude Jones' from filing a timely, proper appeal of [the] decision once that decision was reached.") As such, Stokes' argument is unavailing.

Next, Stokes states that he was "discouraged" when he did pursue administrative remedies. In support, he cites to his deposition testimony wherein he describes a conversation with the Security Office:

> When I went and seen [the Security Office], I explained everything
> to them that went on, right? And he even looked at the pictures as

_____

[3] I note that the first and second reasons offered by Stokes are somewhat inconsistent. Stokes simultaneously contends that he was unaware of his ability to appeal but that he also consciously decided not to appeal because the window for doing so had passed. It is unclear how he could make an affirmative decision not to pursue an appeal opportunity that he allegedly did not know existed.

> far as the stab wound, right? . . . But he said beings as though I'm down there on writ, he's not going to tear the jail apart trying to figure out what went on with me when I'd be gone in another couple of weeks.

(<u>See</u> Defs.' Mot., Stokes Dep. 91:21-93:1.)

"An inmate's failure to exhaust will only be allowed under certain limited circumstances and an inmate can defeat a claim of failure to exhaust only by showing he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis v. Warman</u>, 49 Fed. Appx. 365, 368 (3d Cir. 2002). Stokes has not established the extraordinary circumstances necessary to justify excusal of the exhaustion requirement. There is no evidence that he was misled or prevented from complying with the applicable procedural rules. Simply feeling "discouraged" or believing that compliance is futile clearly do not suffice under the high bar set by the United States Court of Appeals for the Third Circuit. <u>See</u> <u>Davis</u>, 49 F. Appx. at 368; <u>Nyhuis v. Reno</u>, 204 F.3d 65, 71 (3d Cir. 2000) (holding that there is no futility exception to the exhaustion requirement).[4]

Lastly, Stokes appears to suggest that his failure to appeal should be excused because he was denied relief. As DOC guidelines contemplate and the PLRA requires that denied grievances be appealed, the fact that Stokes' grievances were denied clearly does not excuse his failure to appeal.

In sum, Stokes failed to satisfy the PLRA's exhaustion requirement and, therefore, procedurally defaulted on his claims.[5]

---

[4] I also note that Stokes filed a grievance (No. 422183) related to the Security Office's investigation and appealed the denial of that grievance to the Facility Manager.

[5] Additionally, Defendants argued that summary judgment is appropriate because the undisputed evidence demonstrates that (1) Stokes cannot establish an Eighth Amendment violation, (2) Defendants are entitled to qualified immunity and (3) Stokes did not adequately exhaust his

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted.

An appropriate order follows.

---

administrative remedies because he failed to name Superintendent Wenerowicz or Unit Manager Golden in any of his grievances. I need not reach these arguments because I have concluded that Stokes failed to exhaust his administrative remedies by not appealing any of the grievances to the Secretary's Office of Inmate Grievance and Appeals.